UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISON

CRYSTAL ELUSTRA and CHRIS LOPEZ, )
as Mother and Next Friend of )
MORIAH ELUSTRA and )
NAJATI ELUSTRA, )
)
        Plaintiffs, )
) No. 08 C 3162
v. )
) Judge John W. Darrah
TOM MINEO and BRAD FRALICH, )
)
        Defendants. )

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' motion to vacate a settlement and the subsequent dismissal of the lawsuit. Plaintiffs Crystal Elustra and Chris Lopez, on behalf of Moriah Elustra and Najati Elustra ("Plaintiffs"), claim that they never consented to a $6,000.00 settlement agreement with Defendants Tom Mineo and Brad Fralich ("Defendants").

### BACKGROUND

On November 21, 2008, a settlement conference took place before Magistrate Judge Denlow. Plaintiffs' attorney, Michael Conway ("Conway"), Plaintiffs, and the Defendants' attorneys were present. A relative of the Plaintiffs, Morad Elustra ("Morad"), was also present at the conference. The following material portions of the transcript of the proceedings after the conference concluded summarizes the relevant events:

THE CLERK: 08-C-3162, Elustra vs. Mineo.

THE COURT: Go ahead and state your full names and spell your last names for the record.

MR. SOTOS: Good afternoon, your Honor, Jim Sotos, S-o-t-o-s, on behalf of defendant Mineo.

MR. TIMBO: John Timbo on behalf of defendant Mineo. T-i-m-b-o.

MR. CONWAY: Michael Conway, C-o-n-w-a-y, on behalf of the plaintiffs.

THE COURT: Okay. This matter came before the Court today for purposes of a settlement conference. We began the settlement conference at approximately 10:00 this morning and it is now approximately 10 minutes after noon. I'd like the counsel for both sides to identify the parties who are present during the settlement conference today. Let me start with the plaintiffs' counsel.

MR. CONWAY: Myself, Michael Conway, Crystal Elustra, Chris Lopez and Najati, I think it's N-a-j-a-t-i Elustra, E-l-u-s-t-r-a.

THE COURT: And was there also the father?

MR. CONWAY: The father's name is --

THE COURT: Morad?

MR. ELUSTRA: Mora.

MR. CONWAY: Mora.

THE COURT: Morad Elustra?

MR. CONWAY: Yes.

THE COURT: Okay, and who is here on behalf of the defendants?

MR. SOTOS: Judge, on behalf of the defendants are both Jim Sotos and Jim Timbo as counsel, along with Kim Kapsos, K-a-p-s-o-s, and Ben Barfell.

\* \* \*

MR. PAYNE: Ronald W. Payne. For Brad Fralich. I'm here with Clyde Minch.

\* \* \*

THE COURT: Okay. In the course of this morning I conducted settlement negotiations between the parties and an agreement was reached to settle the case in the amount of $6,000 on behalf of all plaintiffs. When I asked the parties to put together a settlement checklist term sheet, I asked my law clerk to sit with the parties and preside over that. She then returned to chambers to tell me that the plaintiffs have picked up and walked out and claimed that they have fired their attorney. So could the attorneys please

2

tell me where we stand and if there's any oral motions that the parties wish to present?

MR. SOTOS: Well, on behalf of the defendant Mineo, your Honor, based on the record as established by the Court, we would move to orally enforce -- We would make an oral motion to enforce the settlement agreement. We believe that this was a settlement that was reached including all parties. All parties were represented by counsel. The plaintiffs, Najati Elustra and Crystal Elustra were both here in court and agreed to the settlement, as did Christine Lopez on behalf of the one minor plaintiff, Moria Elustra. And as a result of that we would orally move that the settlement be enforced as was agreed.

THE COURT: What about with respect to the other defendants?

MR. PAYNE: On behalf of Brad Fralich I'd like to join in the same motion with the terms.

\* \* \*

THE COURT: It was my understanding that under the terms of the settlement the plaintiff was going to agree to substitute as defendant the Village on behalf of the officer and the entity Buffalo Wild Wings on behalf of the individual. Mr. Conway, what would you like to say to the Court?

MR. CONWAY: Judge, other than the fact that I was present at all the settlement negotiations, my clients were apprised of offers, demands that were made. They understood what was going on. They understood the settlement, the overall settlement of $6,000. I sat there throughout; I advised them. When we came out here all of a sudden the father, who is not a party to this case, wanted to talk to me and we went outside and he started to go through everything again about the money and this and that and the motion for sanctions. I told him that we resolved it with the assistance of the Court. Thereafter he started to raise his voice to me, got mad at me. I told him, I said, you know, you're going to have to get another lawyer and he goes we'll get another lawyer and he walked out and the rest of his family followed him.

MR. SOTOS: And Judge, if I could just add, it's my understanding that the plaintiffs were apprised at the settlement that the $6,000 figure included attorneys fees and costs.

MR. CONWAY: They were apprised of that, Judge.

THE COURT: And they were so apprised in my chambers in our discussions. The defendants' oral motion -- Well, let me just -- I'm going to recommend to Judge Darrah that the defendants' oral motion for a settlement be granted and that the case -- And I'll recommend to Judge Darrah that the case be dismissed with prejudice upon the payment of the $6,000 to plaintiffs and their counsel, and that the defendant be substituted -- I mean that the substitution of the defendants take place and

3

that the motion for sanctions be withdrawn, the attorneys having discussed that in my presence and having resolved that. So those are the –

\* \* \*

THE COURT: So we will put all that in an order because it's not a consent case. I'm not going to be in a position to personally enter the dispositive orders as far as dismissal but, you know, I'm going to recite for the record, stating in open court I'm recommending that the oral motions, the joint oral motions to enforce the settlement be granted and that the motion for sanctions be withdrawn, and that -- What's the name of the Village?

\* \* \*

THE COURT: And with that, I send you back to Judge Darrah but, you know, I felt that they were fair negotiations, that the parties had a complete understanding of what took place, and they so signified that to me and indicated that both sides had the advice of counsel, were represented by able counsel in these proceedings and agreement was reached. So that's where it stands. Thank you.

MR. CONWAY: Thank you very much.

MR. SOTOS: Thank you, your Honor.

MR. PAYNE: Thanks, Judge.

Plaintiffs allege that they first heard of the $6,000.00 settlement from Judge Denlow's law clerk. Unhappy with this, Plaintiffs state they fired Conway and walked out of the settlement conference.

On December 3, 2008, a status hearing was held before this Court regarding the settlement proceedings in this matter. Conway represented Plaintiffs at this hearing and relayed that his clients did not believe there was a settlement agreement. Based on Judge Denlow's recommendation, the Court enforced the settlement agreement.

Defense Counsel received an email from Conway on December 4, 2008, stating that Plaintiffs terminated him as counsel. Plaintiffs then proceeded to file a *pro se* motion to vacate and reinstate on December 29, 2008.

## LEGAL STANDARD

Federal Courts may offer relief from a final order, judgment, or proceeding based on: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that was not discovered in time for a new trial under Federal Rule of Civil Procedure 59(b); (3) an opposing party's fraud, misrepresentation, or misconduct; (4) a void judgment; (5) a judgment that was satisfied, released, discharged, or the application of the judgment is no longer equitable; or (6) any other reason that justifies relief. Fed R. Civ. P. 60(b). Furthermore, "Rule 60(b) relief is an extraordinary remedy and is granted only in exceptional circumstances." *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006).

## ANALYSIS

The parties dispute what law controls the settlement: Defendants argue that Federal law applies; Plaintiffs argue that Illinois law applies. "Issues regarding the formation, construction, and enforcement of settlement agreements are governed by state contract law." *Magallanes v Illinois Bell Telephone Co.*, 535 F.3d 582, 584 (7th Cir. 2008) (applying state law regarding formation of settlement agreements in a Title VII case). The dispute in this case is whether a binding settlement agreement was reached. Therefore, Illinois Law controls.

Illinois law encourages settlement and allows courts to uphold settlement agreements to their full force and extent. *Kazale v. Flowers*, 185 Ill.App.3d 224, 227 (2d Dist. 1989). Furthermore, oral settlement agreements are enforceable as long as there is an offer, acceptance, and a meeting of the minds over the agreement's terms. *Pritchett v.*

5

*Asbestos Claims Management Corp.*, 332 Ill. App. 3d 890, 896 (5th Dist. 2002) (*Pritchett*).

The first element of a valid settlement agreement is whether there was an offer. Neither party contests this element; the current issue is whether Plaintiffs accepted Defendants' offer of $6,000.00. Acceptance occurs if the material terms regarding each party's promises are reasonably certain. *Pritchett*, 332 Ill. App.3d at 896. Material terms are definite and certain if the Court can determine what the parties have agreed upon. *Pritchett*, 332 Ill. App.3d at 896.

According to Plaintiffs, acceptance did not occur. Plaintiffs allege the material terms of the settlement agreement are not certain or definite because they were unaware of the settlement amount, and the agreement does not state which Plaintiff gets what amount.[1] Based on Judge Denlow's statements, this Court must disagree. During the two-hour settlement conference, Judge Denlow met with Plaintiffs and explained Defendants' offer. Both Judge Denlow and Conway believed Plaintiffs knew, understood, and accepted Defendants' offer. Moreover, the settlement terms were definite and certain enough that Judge Denlow found the offer consisted of $6,000.00, which included attorney's fees and costs and that there was an agreement between the parties to settle all claims for that sum.

Plaintiffs also allege the material terms of the settlement agreement were not certain or definite because Plaintiffs never completed Judge Denlow's settlement checklist. Although Judge Denlow personally requires this checklist, the failure to complete one does not negate the fact that oral settlement agreements are legally binding.

---

[1] Defendants have submitted written correspondence that shows the Plaintiffs at all times negotiated for a global lump sum settlement for all Plaintiffs.

Writing is not a condition precedent to validate a legal agreement where parties contemplate the execution of a written release. *Lampe v. O'Toole*, 292 Ill. App.3d 144, 147 (2d Dist. 1997). Nothing in the settlement conference's transcript indicates that any party's agreement hinged upon the completion of this checklist. Furthermore, Judge Denlow's checklist is not individualized towards any particular lawsuit or party. Moreover, every option on the checklist would not apply specifically to the settlement agreement at hand.

Finally, Plaintiffs allege that the material terms of the settlement agreement are not definite or certain because the settlement agreement lacks a written provision regarding settlements on behalf of minors. Plaintiffs cite Local Rule 17.1, which states in pertinent part that, "Any proposed settlement of an action brought by or on behalf of an infant or incompetent shall not become *final* without written approval by the court in the form of an order, judgment, or decree." U.S. Dist. Ct. Rules N.D. Ill., LR 17.1 (emphasis added). Plaintiffs' argument lacks merit as on December 3, 2008, the Court signed a written order, enforcing the settlement agreement. Local Rule 17.1 does not involve the validity of an oral settlement agreement.

The third element of a valid settlement agreement is a meeting of the minds. A meeting of the minds occurs where the parties agree to the same essential terms and conditions. *Quinlan v. Stouffe*, 355 Ill. App. 3d 830, 839. (4th Dist. 2005). According to Plaintiffs, there was no meeting of the minds as they failed to complete the settlement checklist and walked out of the settlement conference. Plaintiffs' arguments are not convincing. A properly proved settlement agreement is not rendered unenforceable because a party is unwilling to sign it. *Fishburn v. Barker*, 165 Ill. App.3d 229, 230 (3d

Dist. 1988). Here, the only person who appeared to object to the settlement was Morad, a non-party, who objected after the oral agreement was reached in chambers.

Plaintiffs contend they expressly manifested there was no agreement to settle the lawsuit when Morad terminated Conway, and they left without completing the settlement checklist; however, this was after the settlement had been reached. Moreover, the record does not support, and is contrary to, Plaintiffs' claims. On the record, Judge Denlow stated that Plaintiffs were apprised of and agreed to the $6,000.00 settlement. Judge Denlow further stated each party indicated that: (1) they understood what was occurring; (2) they thought the negotiations were fair; and (3) they had reached an agreement.

Finally, Plaintiffs argue Conway lacked their express authority to bind them to any settlement agreement and submitted affidavits to that effect. However, Plaintiffs' argument on this point lacks merit. There is no indication that Conway agreed to the settlement agreement on Plaintiffs' behalf; rather, the record indicates Conway believed his parties were fully apprised and comprehended what occurred during the settlement negotiations.

Moreover, Plaintiffs are bound to the settlement even if Conway agreed to the settlement on Plaintiffs' behalf. Regardless of Plaintiffs' affidavits, "(w)here a party silently stands by and permits her attorney to act in her behalf in dealing with another in a situation where the attorney may be presumed to have authority, the party is estopped from denying the agent's apparent authority as to third persons." *Szymkowski v. Szymkowski*, 104 Ill. App.3d. 630, 633 (1st Dist. 1982). The first and only objection was made by a non-party after the settlement negotiations had ended.

## CONCLUSION

For the foregoing reasons, Plaintiffs have failed to sufficiently support a Motion to Vacate and Reinstate. Therefore, Plaintiffs' motion is denied.

Dated 4-2-09

JOHN W. DARRAH
United States District Court Judge